IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| **Misty Nelson,** | ) | Civil Action No.  2:11-2928-PMD-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| **Science Applications International** | ) | |
| **Corporation, d/b/a SAIC and** | ) | |
| **Joseph Shorter, individually,** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action has been filed by the Plaintiff, a former employee of the Defendant Science Applications International Corporation (SAIC), alleging claims of discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq. Plaintiff also asserts several state law causes of action against SAIC and/or the Defendant Shorter.

The Defendant Shorter filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on November 12, 2012. The Defendant SAIC also filed its own separate motion for summary judgment on that same date. The time for Plaintiff to respond to these motions expired on November 30, 2012, with no response in opposition having been filed by the Plaintiff to either



1

motion. These motions are now before the Court for disposition.[1]

### Allegations of the Complaint

Plaintiff alleges in her Complaint that she began working for the "Defendants" on or about October 7, 2007. Plaintiff further alleges that during the course of her employment she was subjected to inappropriate sexual advances, comments and gestures by the Defendant Shorter, a government employee she was working with under a SAIC contract. Plaintiff alleges that Shorter would give her gifts and cards, would constantly tell Plaintiff that he was in love with her, and would also drive to the Plaintiff's home to bring her gifts. Plaintiff alleges that this unwelcome harassment began on or about April 30, 2010, and continued until September 17, 2010. Plaintiff alleges that she reported Shorter's sexual harassment to her employer, following which she was "subjected to intimidation, [and] harassment in retaliation for her complaints and, continued sexual harassment". Plaintiff further alleges that following her complaints, she was placed on administrative leave on December 17, 2010, and was subsequently terminated on or about January 14, 2011 in retaliation for having reported her complaints of sexual harassment and intimidation.

Plaintiff alleges that she was subjected to sexual harassment and a hostile work environment, and was then retaliated against for engaging in protected conduct, all in violation of Title VII as well as the South Carolina Human Affairs Law (SCHAL) (**First Cause of Action**). Plaintiff further alleges that the Defendants conduct constituted a violation of the public policy of the State of South Carolina (**Second Cause of Action**), that the Defendant Shorter violated her right to

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendants have filed motions for summary judgment. As these are dispositive motions, this Report and Recommendation is entered for review by the Court.

privacy (**Third Cause of Action**), that the Defendant Shorter harassed and stalked her thereby

engaging in a pattern of intentional, substantial, and unreasonable intrusion into her private life

(**Fourth Cause of Action**), that she was subjected to the intentional infliction of emotional distress

(**Fifth Cause of Action**), and that the "Defendants" breached her contract of employment **(Sixth**

**Cause of Action)**.  Plaintiff seeks monetary damages.  See generally, Complaint.

### Discussion

        The Defendants have moved for summary judgment on all of Plaintiff's claims.

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the

pleadings is appropriate.  Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991).

Once the moving party makes this showing, however, the opposing party must respond to the motion

with specific facts showing there is a genuine issue for trial.  Baber v. Hosp. Corp. of Am., 977 F.2d

872, 874-75 (4th Cir. 1992).

### I.

### (First Cause of Action)

        Plaintiff's First Cause of Action is a claim for discrimination under Title VII and,

apparently, SCHAL.[2]  There are three possible claims Plaintiff's First Cause of Action could be

---



    [2]While Plaintiff mentions SCHAL in her First Cause of Action (see Complaint, ¶ 29), it is not
actually clear whether that she has intended to pursue her discrimination claims under this state
statute.  In any event, claims under the South Carolina Human Affairs Law, S.C.Code Ann. § 1-13-
(continued...)

construed as asserting, as follows:

**Sex Discrimination**. While it is clear that Plaintiff has intended to assert claims for hostile work environment and retaliation in her First Cause of Action, it is unclear whether her allegations about how she was treated are intended to also assert a separate claim for disparate treatment sex discrimination. This is an important distinction, because a claim for disparate treatment sex discrimination is a totally different claim from a hostile work environment claim or a retaliation claim. See Murphy v Suffolk County Community College, No. 10-251, 2011 WL 5976082 at * 7 (E.D.N.Y. Nov. 29, 2011)[Noting that Plaintiff's disparate treatment claims, hostile work environment claims, and retaliation claim are all distinct claims and should be alleged in separate counts.]; see also DeClue v. Central Illinois Light Co., 223 F.3d 434, 437 (7th Cir. 2000)[Sexual harassment is a "distinct . . . form of intentional sex discrimination].

Defendants argue in their motion that Plaintiff has failed to plead facts in support of any of the elements of a claim for sex discrimination, has failed to specifically assert any such claim in her Complaint, and that, moreover, during her deposition Plaintiff did not allege any discrete incidents to establish a disparate treatment sex discrimination claim. See Court Docket No. 44-1, p. 10, n. 24. See generally, Complaint, ¶ ¶ 25-40; see also Plaintiff's Deposition [Defendants' Exhibit

---

[2](...continued)

90, et. seq., are generally evaluated under the same standards as are used for evaluating claims under Title VII. See Orr v. Clyburn, 290 S.E.2d 804, 806 (S.C.1982); Tyndall v. National Education Centers, 31 F.3d 209 (4th Cir.1994); S.C.Code Ann. & 1-13-10 et al (2003); cf. Cromer v. Greenwood Com'n of Public Works, No. 92-CP-24-392, 1993 WL 328182, *4 (S.C.Com.Pl. Feb. 3, 1993)[The court notes that its ruling accords with the interpretation of federal employment discrimination laws upon which our state employment discrimination laws are modeled.]. Therefore, if the Defendants are entitled to dismissal of Plaintiff's discrimination claims under Title VII, they are also entitled to dismissal of these claims to the extent they are being asserted under SCHAL.

4

B], pp. 362-365; cf. Austen v. HCA Health Services of Virginia, Inc., No. 00-2359, 2001 WL 242203 at **1 (4th Cir. Mar. 12, 2001); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995), cert. denied, 516 U.S. 870 (1995)[Setting for standard for establishing a prima facie case of disparate treatment gender discrimination]. Defendants further argue that, even if Plaintiff has intended to assert a disparate treatment sex discrimination claim, it would be barred because such a claim exceeds the scope of Plaintiff's EEOC charge. Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995)[Claims that exceed the scope of an administrative charge and any claim that would have naturally arisen from an investigation thereof are procedurally barred); Dorsey v. Pinnacle Automation, Co., 278 F.3d 830, 838 (8th Cir. 2002)["Allowing a complaint to encompass allegations outside the ambit of the predicate [administrative] charge would circumscribe [the administrative agency's] investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely . . . charge"] (internal quotation marks and citations omitted); Bryant v. Bell Atlantic MD., Inc., 288 F.3d 124, 132 (4th Cir. 2002).

As noted, Plaintiff has failed to respond to any of the Defendants' arguments or evidence, including the Defendants' arguments for why they are entitled to summary judgment on any possible disparate treatment sex discrimination claim that Plaintiff may have intended to assert in her Complaint. Therefore, assuming a disparate treatment sex discrimination claim has been asserted in the Complaint, the Defendants are entitled to summary judgment on this claim. Baber, 977 F.2d at 874-875 [Once movant has met burden of showing that summary judgment is appropriate, to avoid summary judgment the opposing party must respond with specific facts showing there is a genuine issue for trial]; see also Coker v. International Paper Co., No. 08-1865, 2010 WL



5

1072643 at * 2 (D.S.C. Mar. 18, 2010); <u>Jones v. Danek Medical, Inc.</u>, No. 96-3323, 1999 WL

1133272, at * 3 (D.S.C. Oct. 12, 1999)["The failure of a party to address an issue raised in summary

judgment may be considered a waiver or abandonment of the relevant cause of action"].

   **Hostile Work Environment**.  With respect to Plaintiff's hostile work environment

claim, this claim (as well as Plaintiff's retaliation claim) can only be asserted against the Defendant

SAIC.  To the extent Plaintiff has intended to also assert her hostile work environment claim or her

retaliation claim against the Defendant Shorter, individually, the Fourth Circuit Court of Appeals has

clearly held that employees of a corporate Defendant are not liable in their individual capacities for

Title VII violations.  <u>Lissau v. Southern Food Service, Inc.</u>, 159 F.3d 177, 178-181 (4th Cir. 1988);

<u>Baird v. Rose</u>, 192 F.3d 462, 472 (4th Cir. 1999) [stating that "Title VII does not provide a remedy

against individual Defendants who do not qualify as 'employers.'"]; <u>see</u> <u>also</u> <u>Jones v. Tyson Foods,</u>

<u>Inc.</u>, 378 F.Supp.2d 705, 708 (E.D.Va. 2004); <u>Hooker v. Wentz</u>, 77 F.Supp.2d 753, 756 (S.D.W.Va.

1999) [supervisors not liable in their individual capacities for Title VII violations]; <u>Dalton v.</u>

<u>Jefferson Smurfit Corp.</u>, 979 F.Supp. 1187, 1201-1203 (S.D.Ohio 1997); <u>Bellamy v. Dowling</u>, 07-

2727, 2009 WL 2151199, at * 10 (D.S.C. Jul. 13, 2009)[Finding that there is no individual liability

in cases brought pursuant to Title VII], <u>aff'd</u>. 2009 WL 3863432 (4th Cir. Nov. 19, 2009); <u>Fantini</u>

<u>v. Salem State College</u>, 557 F.3d 22, 30-31 (1st Cir. 2009); <u>Cintron-Alonso v. GSA Carribean Corp.</u>,

602 F.Supp.2d 319, 323-324 (D. Puerto Rico 2009)[No individual liability for agents or supervisors

under Title VII]; <u>Bailey v. Faurecia, et al.</u>, C.A. No. 09-2013, 2010 WL 5600910, at * 2 (D.S.C. Dec.

1, 2010)["Employees and supervisors are not liable in their individual capacities for violations of

Title VII"], <u>adopted</u>, 2011 WL 165829 (D.S.C. Jan. 19, 2011).



6

With respect to the Defendant SAIC, in order for the Plaintiff to survive summary judgment, there must be evidence sufficient to give rise to a genuine issue of fact as to whether 1) Plaintiff was subjected to unwelcome conduct in a work related setting; 2) the conduct complained of was based on her gender; 3) the conduct was sufficiently severe or pervasive to alter Plaintiff's condition of employment and to create an abusive work environment; and 4) the conduct was imputable on some factual basis to her employer. EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009); Ocheltree v. Scollon Productions, Inc., 308 F.3d 351, 356 (4th Cir. 2002), rehearing en banc, 335 F.3d 325 (4th Cir. 2003), cert. denied, 124 S.Ct. 1406 (2004); Spicer v. Com.of Va. Dep't of Corrections, 66 F.3d 705, 710 (4th Cir. 1995); Brown v. Perry, 184 F.3d 388, 393 (4th Cir. 1999); Scott v. Health Net Federal Services, LLC, No. 11-1947, 2012 WL 340216 at * 2 (4th Cir. Feb. 3, 2012). SAIC argues, inter alia, that Plaintiff's hostile work environment claim fails because the conduct at issue, even assuming for purposes of summary judgment that it was unwelcome, based on her gender, and sufficiently severe or pervasive to create an abusive work environment, is not imputable to SAIC.[3] The undersigned agrees.

To establish a basis for imputing liability for a co-employee's harassing behavior to the employer, the evidence must show that, after receiving actual or constructive knowledge of the allegedly harassing conduct, the employer failed to take prompt and appropriate remedial action to stop the harassment. Mikels v. Durham, 183 F.3d 323, 332 (4th Cir. 1999); Spicer, 66 F.3d at 710. Here, considered in the light most favorable to the Plaintiff, the evidence submitted to this Court



---

[3]SAIC also advances additional arguments for why it is entitled to summary judgment on Plaintiff's hostile work environment claim. However, as the undersigned concludes that the defense discussed hereinabove is sufficient to warrant dismissal of this claim, the Defendant's additional arguments for dismissal have not been analyzed in this opinion.

7

shows that Plaintiff was hired on or about October 1, 2007. Plaintiff was hired by and was an employee of SAIC, a private company, which had a contract with a government entity (SPAWAR) to perform various mechanical, electronic and quality assurance work at a SPAWAR facility. See Defendant's Exhibit B [Plaintiff's Deposition], at pp. 60-61, 112, 218. The Defendant Shorter, an electronics technician, was a SPAWAR employee who worked at the same facility as the SAIC contract employees, including the Plaintiff. Id., pp. 118, 131, 139-141, 144, 167-168, 218; Defendants' Exhibit R [Shorter Deposition], at p. 8. Shorter, as a SPAWAR employee, had no supervisory authority over the Plaintiff, and SAIC had no authority to discipline or terminate Shorter. Plaintiff's Deposition, p. 219; Shorter Deposition, pp. 38, 43.

The evidence further reflects that Plaintiff first reported that Shorter was bothering or harassing her in April 2010. Plaintiff complained to both Marcia Saari, the Defendant's Human Resources Manager, as well at to Fred Auston, SPAWAR's Equal Employment Opportunity Specialist. Plaintiff's Deposition, pp. 223, 230-232. Plaintiff took two (2) paid days off while Saari investigated the situation, and when Plaintiff returned to work, SPAWAR had moved Shorter to another building. Id., pp. 224-225; Shorter Deposition, pp. 32-33. Thereafter, except for one or two occasions when Shorter was in the building for a meeting (and then only from a distance), Plaintiff never saw Shorter at work again. Plaintiff's Deposition, p. 226; Shorter Deposition, pp. 42-43. Shorter never made any other comments to the Plaintiff, or had any contact with her. Id. Additionally, Plaintiff told SAIC that she was satisfied with the outcome of the investigation. Plaintiff's Deposition, pp. 227, 229-230, 234-235, 253, 277-279, 288-289.

SAIC argues that this evidence shows that when SAIC learned of Shorter's conduct,



it took prompt and remedial action in response to Plaintiff's complaints, and that she was thereafter never again harassed or bothered by Shorter. SAIC contends that Plaintiff has therefore failed to establish that Shorter's conduct, even assuming it otherwise met all of the criteria for a hostile work environment claim, is imputable to SAIC for purposes of Title VII liability. Mikels, 183 F.3d at 329-330 [Prompt investigation of complaint followed by reprimand and warning to the offending employee, and where there were no further complaints of harassing conduct, sufficient to avoid liability]; Alford v. Martin & Gass, Inc., No. 09-1134, 2010 WL 3010785, at * 6-7 (4th Cir. July 28, 2010)[Finding that interviewing offending employees, reprimanding them, and warning them of consequences of future inappropriate conduct sufficient remedial action].

As previously noted, Plaintiff has provided no evidence or even argument to dispute the evidence and arguments submitted by the Defendants with respect to this claim. Baber, 977 F.2d at 874-875 [Once moving party establishes basis for summary judgment, to survive summary judgment the opposing party must respond with evidence showing a genuine issue for trial]; see also Coker, 2010 WL 1072643, at * 2 ["[A] plaintiff can abandon claims by failing to address them in response to a summary judgment motion."]. Therefore, Plaintiff has failed to establish a genuine issue of fact with respect to this issue, and the Defendants are entitled to summary judgment on Plaintiff's hostile work environment claim.

**Retaliation Claim**. Plaintiff alleges in her Complaint that after she reported Shorter's sexually harassing behavior, she was subjected to intimidation, harassment, was placed on administrative leave, and ultimately terminated, all in retaliation for having reported Shorter's conduct. Complaint, ¶ ¶ 20-23. Section 704(a) of Title VII, 42 U.S.C. § 2000(e)-3(a)[setting forth



9

the standard for a retaliation claim], provides as follows:

> It shall be an unlawful practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicants for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Retaliation cases under Title VII are subject to the same requirements of proof as are applicable to disparate treatment claims. Ross v. Communications Satellite Corp., 759 F.2d 355, 365 (4th Cir. 1985) overruled on other grounds, Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); see also Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). The employee is initially required to establish a prima facie case of retaliation by a preponderance of the evidence. Such a prima facie case consists of three elements: (1) the employee engaged in protected activity; (2) the employer took adverse action against the employee; and (3) a causal connection existed between the protected activity and the adverse action. Id.; Munday v. Waste Management of North America, Inc., 126 F.3d 239, 242 (4th Cir. 1997). Once a prima facie case has been presented, the Defendant employer has the burden of producing a legitimate, non-discriminatory reason for its actions. If the employer can produce a legitimate, non-discriminatory reason for its actions, the employee must then demonstrate that the Defendant's proffered reason is pretextural. Id.

For purposes of summary judgment, SAIC does not contest that Plaintiff engaged in protected activity by complaining about Shorter's conduct, or that Plaintiff's termination constitutes



10

an adverse employment action.[4] With respect to Plaintiff's termination, the Defendant has submitted evidence to show that Plaintiff understood that her job with SAIC was dependant on a government contract, and that the Federal Government had the authority to increase or decrease staffing levels. Plaintiff testified at her deposition that she had herself witnessed this fluctuation in staffing needs. Plaintiff's Deposition, p. 112. The evidence further reflects that on December 13, 2010, Plaintiff received a letter from Christina Broom, SAIC's Vice President of Human Resources, informing her that her current assignment would end on or about January 24, 2011, and that if she was unable to secure an internal transfer within SAIC by February 11, 2011, her employment would end. Plaintiff's Deposition, pp. 121-122; see also Defendants' Exhibit S [Letter from Christina Broom]. This was some eight months *after* her complaint about Shorter's harassment of her had been resolved in April 2010.

The evidence further reflects that the Plaintiff did not find another job within SAIC, and that she as well as ten (10) other employees were therefore laid off as part of a staff reduction on February 11, 2011. See Defendant's Exhibit T [List of Employees affected by the February 11, 2011 layoff]; Defendant's Exhibit U [Copy of Plaintiff's February 11, 2011 Termination Form]. Plaintiff has provided no evidence whatsoever to dispute the Defendant's evidence as to the cause of her termination, or to show a retaliatory animus on the part of her employer. Dowe v. Total Action

---

[4]Defendant apparently contends that Plaintiff's termination is the only retaliatory conduct alleged in the Complaint. However, Plaintiff also alleges that she was subjected to intimidation and harassment in retaliation for her complaints, and it is arguable that she also claims that having been placed on administrative leave was retaliatory conduct. See Complaint, ¶ ¶ 21-22. In an effort to allow for the development of a potentially meritorious charge, the undersigned has considered these additional allegations from the Complaint. However, as is discussed hereinabove, no evidence has been submitted the Court to support any of these assertions.

Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998) [Plaintiff "must have evidence from which a reasonable factfinder could conclude that a causal connection exists between the protected activity and the adverse action(s)"]; EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The Defendant's burden of establishing a legitimate, non-discriminatory reason is only one of production, not of persuasion]; Cecilino v. Allstate Ins. Co., 908 F.Supp. 519, 532 (N.D.Ill. 1995) [A simple showing that an adverse action occurred after a complaint of discrimination "is not even enough to make out a prima facie case of retaliation, let alone to survive a motion for summary judgment."]. Therefore, to the extent Plaintiff's retaliation claim is premised on her termination, it is subject to dismissal.

With respect to her assertion that being placed on administrative leave was retaliatory conduct, the evidence reflects that after Plaintiff reported her complaints of harassment, her employer asked her if she needed to take a few days off from work. Plaintiff responded to this offer by stating "that [see] would" take the time off, and she was paid for the two (2) days she then took off while her complaint was being investigated. Plaintiff's Deposition, p. 224. No retaliatory conduct is shown in this evidence. Further, Plaintiff herself testified that, thereafter, neither Shorter nor anyone else subjected her to improper conduct, and that Plaintiff did not make any further complaints to SAIC regarding any harassment or anything that she felt was retaliatory. Plaintiff's Deposition, pp. 226-227, 229-230, 234-235, 253, 277-278, 288-289. Therefore, the Defendants are entitled to summary judgment on Plaintiff's retaliation claim.

In sum, as none of the claims asserted in Plaintiff's First Cause of Action have been found to be viable, Plaintiff's First Cause of Action should be dismissed in its entirety.

12

## II.

### (Second Cause of Action)

Plaintiff asserts a public policy tort claim in her Second Cause of Action. Specifically, Plaintiff alleges that the Defendants "wrongful actions as set forth . . . were retaliatory in nature and constituted a hostile work environment . . .", and that her "wrongful discharge . . . constitutes a violation of [the] clear mandate of [the] public policy of the State of South Carolina." Complaint, ¶¶ 42-43. Defendants argue that Plaintiff's wrongful discharge/public policy cause of action should be dismissed because this claim is based on the same allegations that support her claims arising under Title VII, and also because Plaintiff has failed to allege that the conduct set forth in her Complaint constitutes a crime and/or that the Defendants required her to commit a crime. After careful review of the arguments presented with respect to this cause of action, the undersigned is constrained to agree with the Defendants that they are entitled to dismissal of this claim.

In Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213 (S.C. 1985), the South Carolina Supreme Court held that a cause of action in tort exists under South Carolina law where a retaliatory discharge of an at-will employee[5] constitutes a violation of a clear mandate of public policy, such as "when an employer requires an at-will employee, as a condition of retaining employment, to violate the law". Id, at 216. See also Culler v. Blue Ridge Electric Cooperative, Inc., 422 S.E.2d 91 (S.C. 1992). "This exception is generally applied in a situation in which an employer

---

[5]Plaintiff asserts that she had a contract of employment with SAIC, and was therefore not an "at will" employee. However, even assuming arguendo that such a claim could be brought by a contract employee, as is more fully set forth in Section VI of this Report and Recommendation, infra, Plaintiff has failed to set forth sufficient facts or evidence to establish that she had an employment contract.



13

requires an employee to violate a law, or when the reason for the termination is itself a violation of criminal law"; <u>Barron v. Labor Finders of South Carolina</u>, 682 S.E.2d 271, 273 (S.C.Ct. App. 2009), <u>aff'd as modified</u>, 713 S.E.2d 634 (S.C. 2011); although some other situations may also apply. <u>See</u> <u>Washington v. Purdue Farms, Inc.</u>, No. 07-3552, 2009 WL 386926 at * 12 (D.S.C. Feb. 13, 2009)["Several types of public policies have been deemed appropriate to sustain this cause of action including: requiring an employee to violate the criminal law, where the reason for the employee's termination was itself a violation of criminal law, obeying a subpoena, refusing to contribute money to a political action fund, and invoking rights under Payment of Wages Act."].

   Plaintiff has failed in the allegations of her Complaint to identify any public policy violation with respect to this claim. First, there is no allegation, nor has any evidence been submitted to show, that a violation of a criminal law is involved in this matter. Rather, the violations of law cited by the Plaintiff in her Complaint are the Defendant SAIC's alleged violations of Title VII. However, even assuming that SAIC did deny Plaintiff her rights under Title VII (which the undersigned has expressly not found), that is not the commission of a crime, nor is there any allegation that either Defendant otherwise required Plaintiff to violate a public policy. <u>Lawson v. South Carolina Dept. of Corrections</u>, 532 S.E.2d 259, 260-261 (S.C. 2000)[Public policy claim arises where "an employer requires an employee to violate the [criminal] law or the reason for the employee's termination was itself a violation of a criminal law"]; <u>Barron,</u> 682 S.E.2d at 273-274 [No wrongful discharge action where employee was not asked to violate the law and his termination did not violate the criminal law]; <u>Merck v. Advanced Drainage System, Inc.</u>, 921 F.2d 549, 554 (4th Cir. 1990)[The "public policy" exception to the at-will doctrine "is to be very narrowly applied."].

14

In any event, the Defendants also correctly note that the South Carolina Supreme Court has explicitly held that "[w]hen a statute creates a substantive right and provides a remedy for infringement of that right, the Plaintiff is limited to that statutory remedy." Palmer v. House of Blues Myrtle Beach Restaurant Corp., No. 05-3301, 2006 WL 2708278, at * 3 (D.S.C. Sept. 20, 2006) (citing Lawson, 532 S.E.2d 259); Washington, 2009 WL 386926 at * 12, n. 12. Here, Plaintiff seeks a remedy for her claims under Title VII. Lawson, 532 S.E.2d at 261 ["[W]hen a statute creates a substantive right . . . and provides a remedy for infringement of that right, the Plaintiff is limited to the statutory remedy."]; Jefferson v. Chestnut Group, Inc., No. 08-3728, 2009 WL 302312 at * 2 (D.S.C. Feb. 6, 2009)[Dismissing public policy claim where Plaintiff clearly had a potential remedy under South Carolina Human Affairs Law and Title VII]. Therefore, as Plaintiff has a statutory remedy for her claims, she may not pursue a separate state law/wrongful termination cause of action for violation of a public policy. Palmer, 2006 WL 2708278, at * * 3 and 5; Heyward v. Monroe, No. 97-2430, 1998 WL 841494, at * 4 (4th Cir. Dec. 7, 1998)[Finding that Plaintiff's public policy termination claim was appropriately dismissed: "South Carolina permits an action under the public policy exception when an at-will employee is terminated for refusing to violate the law. It has not been extended to circumstances where there is a statutory remedy for employment discrimination, as in this case"]; Zeigler v. Guidant Corp., No. 07-3448, 2008 WL 2001943 at * 2 (D.S.C. May 6, 2008) ["The Ludwick exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear violation of public policy where no other reasonable means of redress exists."] (quoting Stiles v. American General Life Ins. Co., 516 S.E.2d 449, 452 (S.C. 1999)); Dockins v. Ingles Markets, Inc., 413 S.E.2d 18, 19 (S.C.



1992); Epps v. Clarendon County, 405 S.E.2d 386, 387 (S.C. 1991).

The Defendants are entitled to dismissal of Plaintiff's Second Cause of Action for wrongful discharge in violation of the public policy of South Carolina.

### III.

### (Third Cause of Action)

Plaintiff's Third Cause of Action is an invasion of privacy claim asserted against the Defendant Shorter only. The concept of invasion of privacy encompasses the wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities, or which involves an unreasonable and highly offensive intrusion upon the seclusion of another. O'Shea v. Lesser, 416 S.E.2d 629 (S.C. 1992), citing Meetze v. The Associated Press, 95 S.E.2d 606 (S.C. 1956); Weeks v. Union Camp Corp., Nos. 98-2814 and 98-2815, 2000 WL 727771, at * 8 (4th Cir. June 7, 2000).

Plaintiff alleges that Shorter "wrongfully, intentionally, substantially, and unreasonably intruded into [her] private affairs" and on her "right to be left alone and to be free from unreasonable intrusions". Complaint, ¶ ¶ 46-47. When a Plaintiff basis an action for invasion of privacy on "intrusion" alone,[6] in order to be entitled to relief they must show "a blatant and shocking disregard of [their] rights, and serious mental or physical injury or humiliation . . . resulting

---

[6]There are actually three theories under which an invasion of privacy claim can be brought: wrongful appropriation of personality, wrongful publicizing of private affairs, and wrongful intrusion into private affairs. Doe 2 v. The Associated Press, 331 F.3d 417, 421 (4th Cir. 2003); Sloan v. South Carolina Dep't of Public Safety, 586 S.E.2d 108, 100 (S.C. 2003); Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126, 133-134 (S.C. 1999); Tate v. Bank of America, No. 10-2335, 2011 WL 2682100, at * 4 (D.S.C. June 15, 2011), adopted by, 2011 WL 2682157 (D.S.C. July 11, 2011). Plaintiff has asserted only an "intrusion" claim in this lawsuit.

16

therefrom". Rycroft v. Gaddy, 314 S.E.2d 39, 43 (S.C. 1984), citing Shorter v. Retail Credit Co., 251 F.Supp. 329 (D.S.C. 1966). Therefore, to survive summary judgment there must be evidence before the Court sufficient to at least create a genuine issue of fact as to whether Shorter showed a blatant and shocking disregard of Plaintiff's rights, resulting in serious mental or physical injury or humiliation to her. Moore v. Rural Health Services, Inc., No. 04-376, 2007 WL 666796, at * 16 (D.S.C. Feb. 24, 2007). The evidence before the Court fails to establish this criteria.

Even if Shorter's conduct towards the Plaintiff ultimately made her uncomfortable, the evidence reflects that they initially had a good, even somewhat affectionate, relationship until they apparently had a falling out. See generally, Plaintiff's Deposition, pp. 181-182, 184-185, 321-322, 324-325; Shorter Deposition, pp. 25, 53-57; see also Defendant's Exhibits AA [Copies of greeting cards from Plaintiff to Shorter], BB [Copy of greeting card from Plaintiff's mother to Shorter], CC [Copy of text messages], DD [Copies of photographs Shorter received on his cell phone from the Plaintiff]. Although, considered in the light most favorable to Plaintiff, the evidence reflects that by April 2010 Shorter's attentions had become unwelcome, the evidence further reflects that after Plaintiff complained to management Shorter never thereafter bothered Plaintiff again, or even had any communication with her. This evidence does not show an unreasonable and "substantial" intrusion into Plaintiff's private affairs, or a "blatant and shocking disregard of Plaintiff's rights". Snakenberg v. The Hartford Casualty Insurance Co., 383 S.E.2d 2, 6 (S.C.Ct. App. 1989)[Finding that whether the conduct in question constitutes a blatant and shocking disregard of an individual's rights and serious mental injury or humiliation as a result thereof is, in the first instance, a question of law for the Court]. In any event, there is also no evidence before the Court whatsoever to show



17

that Plaintiff suffered any serious mental or physical injury or humiliation as a result of Shorter's alleged conduct. See Plaintiff's Deposition, pp. 288-289, 317, 321-325, 364-365).

Finally, as previously noted, in response to the Defendant Shorter's arguments and citations to evidence in support of summary judgment on this claim, Plaintiff has submitted no arguments or evidence in opposition. Jones, No. 96-3323, 1999 WL 1133272, at * 3 ["The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action"]. Therefore, Shorter is entitled to summary judgment on Plaintiff's invasion of privacy claim.

## IV.

### (Harassment and Stalking)

With respect to this cause of action, which is again asserted only against the Defendant Shorter, the Defendant argues in his motion for summary judgment that he is unaware of any South Carolina common law cause of action for harassment or stalking, noting that while there is a criminal statute which prohibits harassment or stalking, this statute does not create an implied private right of action. See S.C.Code Ann. § 16-3-1700; Ray v. Bowers, No. 08-3512, 2009 WL4893209 at * 5 (D.S.C. Dec. 17, 2009)[Court dismissed Plaintiff's claims of stalking and harassment because "§ 16-3-1700 is a criminal statute and does not provide a private civil remedy."]; White v. Stacher, No. 05-1737, 2006 WL 1207857 at * 6 (D.S.C. May 1, 2006)[Finding no civil action for stalking]; see also Adkins v. South Carolina Department of Corrections, 602 S.E.2d 51, 54 (S.C. 2004)["Where a statute does not specifically create a private cause of action, one can be implied only if legislation was enacted for the special benefit of a private party."].



18

In response to the Defendant's argument, Plaintiff has offered no argument or case law to show that she has a cause of action in tort under South Carolina law for harassment or stalking,[7] and Plaintiff cannot seek to have prosecutors or law enforcement officials institute a criminal action against Shorter under the cited state criminal statute, because a private citizen does not have a judicially cognizable interest in the prosecution or non-prosecution of another person or entity. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973); Wallace v. Singleton, No. 12-729, 2012 WL 2405316, at * 7 (D.S.C. May 3, 2012), adopted by, 2012 WL 2407648 (D.S.C. June 26, 2012).

Therefore, Shorter should be granted summary judgment on this cause of action.

## V

### (Fifth Cause of Action)

Plaintiff's Fifth Cause of Action is for the state law tort of intentional infliction of emotional distress, also known as "outrage". Under South Carolina law, in order to recover on a claim for intentional infliction of emotional distress, Plaintiff must demonstrate that the Defendants' conduct was so extreme and outrageous that it exceeded all possible bounds of decency, and that the emotional distress suffered by the Plaintiff was so severe that "no reasonable [person] could be expected to endure it." See Argoe v. Three Rivers Behavioral Health, L.L.C., 710 S.E.2d 67, 74 (S.C. 2011); Wright v. Sparrow, 381 S.E.2d 503, 505 (S.C.Ct.App. 1989); Ford v. Hutson, 276 S.E.2d 776, 778 (S.C. 1981); Shipman v. Glenn, 443 S.E.2d 921 (S.C.Ct.App. 1994); Gattison v. South Carolina State College, 456 S.E.2d 414 (S.C.Ct.App. 1995).

---

[7]There is, however, a state tort claim for intentional infliction of emotional distress, which is discussed separately herein in Section V, infra.

19

Claims by employees against an employer for intention infliction of emotional distress are subject to, and barred by, the South Carolina Workers Compensation Act. <u>See</u> <u>Dickert v. Metropolitan Life Ins. Co.</u>, 428 S.E.2d 700, 701 (S.C. 1993)[Intentional infliction of emotional distress is within the scope of the Act]; <u>McClain v. Pactive Corp.</u>, 602 S.E.2d 87, 89 (S.C.Ct. App. 2004)["[I]ntentional infliction of emotional distress constitutes a personal injury that falls within the scope of the Act."]; <u>Palmer v. House of Blues Myrtle Beach Restaurant Corp.</u>, No. 05-3301, 2006 WL 2708278 (D.S.C. Sept. 20, 2006). Therefore, SAIC, as Plaintiff's employer, is entitled to dismissal as a party Defendant from this cause of action.

As for Shorter, Plaintiff could conceivably proceed on a claim for outrage against this Defendant in his *individual capacity*, if she can show that Shorter acted outside the scope of his employment. <u>See</u> <u>Southern Holdings, Inc. v. Horry County, South Carolina</u>, No. 02-1859, 2007 WL 896111 at * 8-9 (D.S.C. Mar. 21, 2007)[allowing claim against Defendant in individual capacity where Defendant is alleged to have acted outside the scope of his employment]. However, even assuming that Plaintiff had submitted evidence to support a finding of individual conduct by Shorter which fell outside the scope of his employment (no such specific allegations are set forth in Plaintiff's Complaint), there is no evidence before the Court sufficient to give rise to a genuine issue of fact as to whether Plaintiff otherwise meets the high standard for proceeding on this cause of action.

Considered in the light most favorable to the Plaintiff, the evidence reflects that during the course of her employment, she and Shorter at least at one point had a good relationship, and that it was not until April 2010 that she reported that Shorter's conduct towards her had become unwanted and what she considered harassing. After Plaintiff complained, however, Shorter was moved to a



20

different area and Plaintiff herself conceded in her testimony that she was never bothered by him again. Plaintiff's Deposition, pp. 224-226, Shorter Deposition, pp. 32-33; 42-43. This evidence, particularly in the absence of any contrary argument or evidence from the Plaintiff, is simply not sufficient to create a genuine issue of fact as to whether Shorter engaged in the extreme behavior required to maintain a cause of action for outrage in South Carolina. See Dececco v. University of South Carolina, ___ F.Supp.2d ___, 2013 WL 168221 at * * 37-38 (D.S.C. Jan. 16, 2013)[Conduct must be so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious]; Corder v. Champion Road Machinery International Corporation, 324 S.E.2d 79, 81 (1984) [In South Carolina, a plaintiff can only succeed on a claim for intentional infliction of emotional distress "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."]; Hudson v. Zenith Engraving Company, Inc., 259 S.E.2d 812, 814 (1979); cf. Gattison, 456 S.E.2d at 416-417 [even verbally abusive accusations in the business setting do not give rise to a claim for intentional infliction of emotional distress]; Folkens v. Hunt, 348 S.E.2d 839, 845 (S.C.Ct.App. 1986); Wright, 381 S.E.2d at 505-506 [allegations that employer plotted to build a case to justify firing employee by loading her with responsibility while stripping her of authority, changing the way she should perform her duties and accusing her of not following directions, insufficient to assert a claim for intentional infliction of emotional distress]; Shipman, 443 S.E.2d at 922-923 [supervisor's conduct in ridiculing speech impediment of and threatening to fire an employee who had cerebral palsy did not provide a sufficient basis for intentional infliction of emotional distress]; Wilkes v. Young, 28 F.3d 1362, 1366 (4th Cir. 1994); Craig v. Andrew Aaron



21

& Associates, Inc., 947 F.Supp. 208, 212-213 (D.S.C. 1996).

Therefore, Plaintiff's cause of action for outrage should be dismissed.

## VI.

### (Sixth Cause of Action)

Plaintiff's final cause of action is for breach of contract against the Defendant SAIC. Plaintiff alleges that she and the Defendant "entered into a contract" whereby SAIC agreed to employ her, which contract indicated that she would paid for "working", and that she was given and signed a number of documents when she was hired, including documents outlining the Defendant's sexual harassment policy. Plaintiff further alleges that the Defendant breached her employment contract by terminating her after she reported being sexually harassed, entitling her to damages. See generally, Complaint, ¶¶ 12-13, 60-62. SAIC argues in its motion for summary judgment, and the undersigned agrees, that Plaintiff has failed to establish a viable claim for breach of an employment contract.

The necessary elements of a contract are an offer, acceptance, and valuable consideration. Roberts v. Gaskins, 486 S.E.2d 771, 773 (S.C. 1997), citing Carolina Amusement Co., Inc. v. Connecticut Nat'l Life Ins., Co., 437 S.E.2d 122 (S.C. Ct. App. 1993). With respect to employment, however, there is a presumption in South Carolina that employees are at-will, meaning that the employment is terminable at any time by either party, for any reason or for no reason at all. Ross v. Life Insurance Co. of Virginia, 259 S.E.2d 814, 815 (S.C. 1979); see also Cape v. Greenville County School District, 618 S.E.2d 881, 883 (S.C. 2005). Therefore, in order to survive summary judgment on this claim, the evidence must first be sufficient to give rise to a genuine issue of fact as to the actual existence of an employment contract beyond the at-will relationship. Cf. Perrine v. G4S



22

Solutions (USA), Inc., No. 11-1210, 2011 WL 3563110, at * 2 (D.S.C. Aug. 9, 2011)["[T]here is a presumption in South Carolina that employees are at-will, and in order to survive a Rule 12 motion to dismiss on a claim for breach of a contract of employment, a Plaintiff must 'plead sufficient factual allegations to establish the existence of an employment contract beyond the at-will relationship . . . .'"], quoting Amason v. P. K. Management, LLC, No. 10-1752, 2011 WL 1100169, at * 6 (D.S.C. Mar. 23, 2011); see also Prescott v. Farmer's Tel. Co-Op., Inc., 516 S.E.2d 923, 927, n. 8 (S.C. 1999)[In South Carolina, "there is a presumption of at-will employment'].

Plaintiff has failed to submit evidence to establish that she had an employment "contract" with SAIC.  Plaintiff has only alleged in very general and conclusory terms that she "entered into a contract" with the Defendant through the signing of a number of unidentified documents and by having been provided with a copy of the Defendant's non-discrimination policy, which included a policy against sexual harassment. Complaint, ¶ ¶ 12-13, 60-62. See also, Plaintiff's Deposition, pp. 84-88; Defendants' Exhibits C [Employment offer and acceptance], K [Relevant portions of the 2008 SAIC Employee Handbook], L [SAIC's Equal Employment and Affirmative Action Policy], M [SAIC's Harassment Policy].  However, Plaintiff's general and conclusory allegations in her Complaint do not establish the existence of an employment contract, none of the exhibits and evidence submitted by the Defendants establishes the existence of a contract, and Plaintiff has failed to present any evidence herself or even argument to establish the existence of any such contract.  Perrine, 2011 WL 3563110 [Handbook contract claim dismissed where claim in complaint only stated in general and conclusory terms]; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory allegations insufficient to maintain claim]; cf. Small

v. Springs Industries, Inc., 357 S.E.2d 452, 455 (S.C. 1987)[only policy drafted in sufficiently mandatory terms may serve to alter at-will employment status]; Wadford v. Hartford Fire Ins. Co., No. 87-2872, 1988 WL 492127 at *5 (D.S.C. 1988) ["A review of the relevant authorities... reveals that a policy or representation must limit the duration of employment or the employer's right to terminate employment in order to alter at-will status.  Other terms and conditions of employment, including pay, benefits, job duties, or location of performance may be changed prospectively by either party without violating an employment contract with an indefinite term."]; Horton v. Darby Electric Co., Inc., 599 S.E.2d 456, 460-461 (S.C. 2004) [Manual containing progressive disciplinary procedure did not alter employee's at-will status].

Additionally, the alleged breach in this case is a claimed breach of the Defendant's sexual harassment policy.  Complaint, ¶ 62.  Such policies have been routinely held not to, by themselves, constitute a contract.  Cf. Ford v. Musashi S.C., Inc., No. 07-3734, 2008 WL 4414385 (D.S.C. Sept. 23, 2008), adopting in part and denying in part, 2008 WL 4414497, at * 3 (D.S.C. July 11, 2008)["[U]nder South Carolina law where an employee handbook provides a general policy statement of nondiscrimination such a 'provision does not constitute a promise altering the at-will employment relationship'"]; Fyall v. ATC/Ancom of South Carolina, No. 04-23086, 2005 WL 2656962, at * 4 (D.S.C. Oct. 18, 2005) [same]; Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 698 (S.C. 2005), citing  McKenzie v. Lunds, Inc., 63 F.Supp.2d 986, 1003 (D.Minn. 1999) and Cherella v. Phoenix Technologies, Ltd., 586 N.E.2d 29, 31 (Mass. 1992).

Therefore, Plaintiff's breach of contract claim is subject to summary judgment.

### **Conclusion**

Based on the foregoing, it is recommended that the Defendants' motions for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

February ___, 2013
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



26